# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION

MDL No. 2326

--------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Dolly Allen v. Boston Scientific Corp.*        No. 2:13-cv-6738

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 29]. For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

### I.    Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific*

*Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html)). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The plaintiff's case was selected as a Wave 2 case by BSC.

On November 9, 2007, Ms. Allen was surgically implanted with the Obtryx Transobturator Mid-Urethral Sling System ("Obtryx"), a product manufactured by BSC to treat SUI. (*See* BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 29] at 3). She received her surgery at a hospital in Easton, Maryland. (*Id.*). Ms. Allen claims that as a result of implantation of the Obtryx, she has experienced multiple complications, including bleeding and renewed incontinence. (*Id.* at 3–4). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breach of express and implied warranty; fraudulent concealment; and punitive damages. (*Id.* at 1 (citing to the plaintiff's Short Form Complaint)). In the instant motion, BSC argues that each of the plaintiff's claims is barred by Maryland's statute of limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss Ms. Allen's case.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction

3

where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). However, if a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as Ms. Allen did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Allen received the Obtryx implantation surgery in Maryland. Thus, the choice-of-law principles of Maryland guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Maryland law to the plaintiff's claims. In tort actions, Maryland "adheres to the *lex loci delicti* rule in analyzing choice of law problems." *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). Under this rule, a court must apply "the law of the state in which the alleged tort took place," *id.*, or, said differently, "the place where the last event required to give rise to the tort occurred." *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 844 (Md. 2006). Here, the implantation surgery that allegedly resulted in Ms. Allen's injuries took place in Maryland. Thus, I apply Maryland's substantive law—including Maryland's statutes of limitations—to this case.

### III. Discussion

Because this case prompts two different statutes of limitations, I split my analysis into two categories: (1) Ms. Allen's non-warranty claims, which have a three-year statute of limitations, and (2) Ms. Allen's warranty claims, which have a four-year statute of limitations.

### A. Non-Warranty Product Liability Claims

Unless otherwise provided in Maryland's Code, the statute of limitations for civil actions is three years. Md. Code Ann. Cts. & Jud. Proc. § 5-101 (West 2014). Ms. Allen's non-warranty claims fall under this general statute. The discovery rule also comes into play for these claims. In *Pennwalt Corp. v. Nasios*, the Maryland Court of Appeals adopted the discovery rule for medical product liability claims, holding that the statute of limitations for such claims begins to run when the plaintiff "knew or should have known (1) he suffered injury; (2) the injury was caused by the defendant; and (3) there was manufacturer wrongdoing or a product defect." 550 A.2d 1155, 1167 (Md. 1988). The Maryland Court of Appeals has defined the requisite knowledge as "[b]eing on inquiry notice." *Anne Arundel Cnty. v. Halle Dev., Inc.*, 971 A.2d 214, 228 (Md. 2009). To trigger the statute of limitations, the plaintiff must gain "knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [cause of action]." *Id.*

BSC argues that Ms. Allen was on inquiry notice, at the latest, on December 31, 2007. According to the Plaintiff Fact Sheet, Ms. Allen complained to her doctor about bleeding and incontinence problems on November 11, 2007, two days after her implant surgery. (*See* Pl. Fact Sheet [Docket 29-2], at 9). She asked her physician to "take it out" because "[i]t didn't work." (Allen Dep. [Docket 29-1], at 194:19–20). At this point, Ms. Allen attributed her condition to the

5

Obtryx. (Pl. Fact Sheet [Docket 29-2], at 9). Furthermore, on December 31, 2007, Ms. Allen sought the care of a urologist, Dr. Chai, who reported that Ms. Allen's incontinence is "just as bad" after the Obtryx implant. (Letter from Dr. Toby C. Chai to Dr. Edmond J. Fitzgerald (Dec. 31, 2007) [Docket 29-4], at 2). From these facts, BSC contends that Ms. Allen had "some personal belief" that the Obtryx caused her injuries on December 31, 2007, and as such, her complaint, filed April 1, 2013, missed the statute of limitations by more than two years. (Mem. in Supp. [Docket 29], at 9).

The facts, when viewed in the light most favorable to the nonmovant, are not as unequivocal as BSC frames them to be. At best, Ms. Allen's comments indicate that, within days of her surgery, she believed that the Obtryx failed to fix her SUI. But a genuine issue of material fact exists as to whether, at this time, she suspected that her injuries may have resulted from someone's wrongdoing. On the one hand, Ms. Allen reported on her Plaintiff Fact Sheet that she attributed her urinary problems to the mesh on November 11, 2007. (*See* Pl. Fact Sheet [Docket 29-2], at 9). On the other hand, it was not until March 2012 that a medical professional told her that the Obtryx was obstructing her urethra and thus responsible for her urinary difficulties. (*See* Allen Dep. [Docket 64-3], at 38:1–17 (explaining Dr. Cespedes's diagnosis that the sling was obstructing her urethra)).[1] At which of these occasions Ms. Allen should have taken further investigation into manufacturer wrongdoing, thus triggering the statute of limitations, is a fact question left to the jury. *See Baysinger v. Schmid Prods. Co.*, 514 A.2d 1, 4 (Md. 1986) ("Whether a reasonably prudent person should then have undertaken a further investigation is a matter about which reasonable minds could differ, and it was therefore inappropriate for resolution by summary judgment."). As the Maryland Court of Appeals put it,

---

[1] Indeed, each physician that Ms. Allen saw prior to March 2012 was unable to diagnose Ms. Allen's urination problems. (*See* Allen Dep. [Docket 64-3], at 95:7–9 ("The doctors didn't know what it was from other than --- other than I wasn't going like I should.")).

> while the record indicates that [the plaintiff] entertained various suspicions concerning the cause of her illness, there is no evidence that she then suspected, or reasonably should have suspected, wrongdoing on the part of anyone.

*Id. See also Helinski v. Appleton Papers*, 952 F. Supp. 266, 272 (D. Md. 1997) ("Thus, the mere fact that [the plaintiff] attempted to determine the genesis of her health problems, and even suspected [the product] might be a factor, was not enough to commence the limitations period.").

On this reasoning, and bearing in mind my duty to draw all legitimate inferences in favor of the nonmovant, I **DENY** BSC's Motion with respect to Ms. Allen's non-warranty claims.

### B. Breach of Warranty Claims

Actions for breach of warranty are governed by Maryland's Uniform Commercial Code ("UCC"), which applies to transactions in goods. Md. Code Ann. Com. Law § 2-102 (West 2014). The Maryland Court of Appeals has held that a prescription drug satisfies the definition of "goods" as defined in the UCC. *See Rite Aid Corp. v. Levy-Gray*, 894 A.2d 563, 571 (Md. 2006) (finding "no reasonable basis upon which to distinguish between prescription drugs and other goods under the Uniform Commercial Code with respect to express warranties").[2] Thus, predicting that the court would consider prescription devices in the same way, *see, e.g.*, *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 87 Cal. Rptr. 3d 5, 15–16 (Cal. Ct. App. 2008) (applying the UCC's statute of limitations to the plaintiff's breach-of-warranty claim against the manufacturer of an automated medication dispensing machine); *Malawy v. Richards Mfg. Co.*, 501 N.E.2d 376, 383 (Ill. App. Ct. 1986) (considering a bone plate a "good" under Illinois's UCC in a suit between a patient and the device manufacturer), I apply the UCC's four-year statute of limitations to Ms. Allen's claims for express and implied breach of warranty. Md.

---

[2] Maryland Code § 2-105 of the Commercial Law Article defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title 8) and things in action. Md. Code Ann. Com. Law § 2-105(1).

Code Ann., Com. Law § 2-725(1).

The statute of limitations begins "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," which is measured from the time "tender of delivery is made." *Id.* § 2-725(2). Here, Ms. Allen was delivered the Obtryx on the day of her implantation surgery, November 9, 2007. Therefore, the statute of limitations for any breach of warranty claim ran on November 9, 2011. Because the plaintiff did not file her complaint until April 1, 2013, her breach of warranty claims are barred by the statute of limitations. Accordingly, her claims for express and implied breach of warranty are **DISMISSED**, and BSC's Motion on these claims is **GRANTED**.

### IV. Conclusion

As explained above, the defendant's Motion for Summary Judgment Based on Statute of Limitations [Docket 29] is **GRANTED in part** and **DENIED in part**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 12, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE